[Cite as *State v. Bangera*, 2016-Ohio-4596.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-G-0021** |
| DOMINIC A. BANGERA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 14 C 000106.

Judgment: Affirmed.

*James R. Flaiz,* Geauga, County Prosecutor, and *Christopher J. Joyce*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Mark B. Marein,* Marein & Bradley, 222 Leader Building, 526 Superior Avenue, Cleveland, OH 44114 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Dominic A. Bangera, appeals his conviction in the Geauga County Court of Common Pleas, following a bench trial, of trafficking in heroin and related felonies along with major drug offender specifications. The principal issue is whether the trial court erred in denying appellant's motion to suppress evidence

obtained during a search of his residence pursuant to a search warrant. For the reasons that follow, we affirm.

{¶2} On June 3, 2014, a United States Postal Service Investigator advised Geauga County Sheriff's detectives that appellant and his wife, Jaqueline Sanchez, who reside at 15590 Parkview Drive in Newbury Township, were suspects in a money-laundering investigation involving their suspicious purchases of money orders.

{¶3} Based on this information, on June 11, 2014, Detective Steven Deardowski of the Sheriff's Office conducted a trash pull at appellant's residence. During the trash pull, Detective Deardowski discovered evidence of drug activity as well as evidence that confirmed the Postal Service's report. Based on the foregoing information, Detective Deardowski presented the Judge of the Chardon Municipal Court with an affidavit for a search warrant and a proposed search warrant for appellant's residence. The detective's affidavit provided, in pertinent part:

{¶4} On June 3, 2014, detectives were provided information from the U.S. Postal Service that the residents of 15590 Parkview Dr., Newbury Twp. are suspects in a money laundering investigation. The detectives were informed that residents (Jaqueline Sanchez & Dominick Bangera) of that address have been involved in purchasing money orders for large amounts of money. The U.S. Postal Service stated these purchases have been suspicious because they are consistently purchasing the [money] orders just under the $3,000.00 threshold.

{¶5} On June 11, 2014, detectives conducted a trash pull at the residence with the assistance of Universal Disposal. The trash collected was monitored from the curb side to where it was processed at the Sheriff's Office.

{¶6} During a search of the garbage one bud of marijuana was found in conjunction with the top portion of a heat seal bag. It should be noted that heat seal bags are often used in the packaging of marijuana.

{¶7}   (4) money order receipts were located noting (11) money order transactions totaling an amount of approximately $7,017.00.  The dates on these receipts were 2/18/14, 5/7/14, 5/30/14 and 6/4/14.

{¶8}   (2) Express Mail receipts [were located] for packages that were sent to Pico Rivera, CA on 4/17/14 and 5/20/14.

{¶9}   (2) Express Mail receipts [were located] for packages that were sent to Montebello, CA on 5/12/14 and 5/30/14.

{¶10}   It should be noted that resident Dominick Bangera has a prior drug cultivation conviction in 2006.

{¶11}   Information [was] provided from the U.S. Postal Service Investigator that since an investigation was started approximately a month ago approximately (20) money orders have been sent by the suspects.

{¶12}   Based on the above aforementioned investigation and my experience, this Detective has probable cause to believe and does believe that Jaqueline Sanchez and Dominick Bangera are in violation of Ohio Revised Code Section 2925.03 Trafficking in drugs, 2925.11 Possession of drugs, and 2923.24 Possessing Criminal Tools.  Furthermore this detective has probable cause to believe and does believe that evidence related to these crimes which occurred [is] in or on the property located at 15590 Parkview Rd. Newbury Twp., Geauga County Ohio.  The residence is described as a two story single family home on the west side of Park View Dr. with the front door facing south.

{¶13}   Based on the foregoing affidavit, the Chardon Municipal Court Judge

signed and issued the search warrant.  The warrant provided, in pertinent part:

{¶14}   That in the Township of Newbury, Geauga County, Ohio, the following criminal offense(s) ha[ve] occurred:

{¶15}   Possession of Drugs R.C. §2925.11

{¶16}   Trafficking in Drugs R.C. §2925.03

{¶17}   That the following items of property are connected with the commission of said offense(s):

{¶18}   Drugs of abuse, * * * Drug Paraphernalia, * * * and other items which are evidence of and in violation of ORC 2925.03 Trafficking

3

in Drugs. These items include but are not limited to scales, packaging materials, paraphernalia, weapons, pagers, scanners, notes, records, mail, ledgers, photographs, receipts, address books, phone books, cell phones, any and all electronic communication devices, caller ID boxes, answering machines, financial records, conveyances, books, safes, safety deposit box keys, U.S. currency, checks, money drafts, real estate drafts, deposit slips, canceled checks, any funds gained from sales, printouts, computers, media storage devices and evidence of expenditure(s) of currency and currency equivalents, and items bartered or sold in exchange for said contraband, and any vehicles used in the transportation of said contraband.

**{¶19}** and all other fruits and instrumentalities of the crime at present time unknown.

**{¶20}** The warrant was executed on the same day, June 11, 2014, and large amounts of narcotics (including heroin, methamphetamine, and marijuana), bundles of cash, money orders, and packaging materials were seized at appellant's residence.

**{¶21}** Appellant admitted to detectives that he has been dealing drugs since 1998, including marijuana, cocaine, heroin, and meth.

**{¶22}** On July 25, 2014, appellant was charged in a 13-count indictment with engaging in a pattern of corrupt activity, a felony of the second degree (Count 1); two counts of aggravated trafficking in drugs, each being a felony of the first degree and each with a major drug offender specification (Counts 2 and 3); two counts of trafficking in heroin, each being a felony of the first degree and each with a major drug offender specification (Counts 4 and 5); two counts of trafficking in marijuana, each being a felony of the second degree (Counts 6 and 7); trafficking in drugs, a felony of the fourth degree (Count 8); aggravated possession of drugs, a felony of the first degree, with a major drug offender specification (Count 9); possession of heroin, a felony of the first degree, with a major drug offender specification (Count 10); possession of marijuana, a

4

felony of the second degree (Count 11); possession of drugs, a felony of the fourth degree (Count 12); and possession of criminal tools, a felony of the fifth degree (Count 13). Appellant pled not guilty.

{¶23} Subsequently, appellant moved to suppress the evidence obtained pursuant to the search warrant. Following a hearing on the motion, the trial court entered an exhaustive, 22-page judgment denying the motion to suppress.

{¶24} On the state's motion, the trial court dismissed Counts 2, 4, and 6 of the indictment. Appellant waived his right to a trial by jury and the case was tried to the court. Following the trial, the court returned a verdict finding appellant guilty of all remaining counts and the major drug offender specifications.

{¶25} Following a sentencing hearing, the trial court sentenced appellant to an aggregate term of 30 years in prison. Appellant appeals his conviction asserting three assignments of error. For his first, he alleges:

{¶26} "The fruits of the search of the Bangera residence must be suppressed because the warrant was not supported by probable cause to believe the enumerated items to be seized would be found in the home."

{¶27} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a hearing on a motion to suppress evidence, the trial court acts as the trier of fact and, as such, is authorized to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357 (1992). An appellate court reviewing a ruling on a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State*

5

*v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). Accepting these facts as true, the appellate court independently determines, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶28} The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *."

{¶29} The Supreme Court of Ohio has held that "Section 14, Article I of the Ohio Constitution * * * afford[s] the same protection as the Fourth Amendment in felony cases." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, ¶10, fn. 1.

{¶30} Appellant asserts five issues with respect to this assigned error. First, he argues the affidavit offered in support of the search warrant was overbroad in that it did not particularly describe the items to be seized. In support, he argues the affidavit did not include the same list of items to be seized as set forth in the search warrant or set forth any connection, based on probable cause, between the items to be seized and the alleged crimes.

{¶31} However, it is the search warrant, not the affidavit offered in support of the warrant, that is subject to Fourth Amendment scrutiny. The Fourth Amendment provides that "no *Warrants* shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.*" (Emphasis added.) "The manifest purpose of this particularity requirement was to prevent general searches. * * * [T]he requirement ensures that the

6

search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79 (1987). By requiring a particular description of the items to be seized, the Fourth Amendment "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).

{¶32} The United States Supreme Court, in *Groh v. Ramirez*, 540 U.S. 551, 557 (2004), held: "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." This court followed *Groh* in *State v. Gritten*, 11th Dist. Portage No. 2004-P-0066, 2005-Ohio-2082, ¶13. Since it is the warrant, not the affidavit, that must particularly describe the things to be seized, the failure of the affidavit to particularly describe the items to be seized does not support a constitutional violation.

{¶33} Further, while Crim.R. 41(C) requires the affidavit to describe the items to be seized, it is well-established that the exclusionary rule will not be applied to violations of Crim.R. 41 that do not rise to the level of constitutional error. *State v. Wilmoth*, 22 Ohio St.3d 251, 262 (1986); *State v. Applebury*, 34 Ohio App.3d 376 (1st Dist.1987). Since the Fourth Amendment does not require the affidavit in support of a search warrant to describe the items to be seized, the failure of an affidavit to describe those items does not result in application of the exclusionary rule.

{¶34} In any event, Crim.R. 41(C) does not require that the items to be seized be described with particularity. That rule provides: "The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, *name or*

*describe the property to be searched for and seized * * *.*" (Emphasis added.) Thus, a general description in the affidavit of the items to be seized would satisfy the rule.

**{¶35}** This court, in *State v. Young*, 146 Ohio App.3d 245, 256 (11th Dist.2000), explained that evidence of drug trafficking set forth in an affidavit for a search warrant would support a warrant for items likely to be found in the possession of a trafficker. Further, the Sixth District's discussion of the particularity requirement of search warrants in *State v. McCrory*, 6th Dist. Wood Nos. WD-09-074, WD-09-090, 2011-Ohio-546, is instructive:

> **{¶36}** "The portions of the warrant limited to fruits and evidence of gambling are sufficiently particular; even though those portions do not contain a time limitation, their subject-matter limitation (fruits and evidence of gambling) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit. * * * Therefore, seizure of the documents pertaining to the gambling and the closely related money laundering charges was permissible." *McCrory* at ¶40, quoting *United States v. Ford*, 184 F.3d 566, 578 (6th Cir.1999).

**{¶37}** Here, the affidavit set forth evidence of drug trafficking and described the items to be seized as evidence related to the crimes of trafficking in drugs, possession of drugs, and possession of criminal tools. As a result, the affidavit satisfied the description requirement of Crim.R. 41(C).

**{¶38}** We therefore hold the trial court did not err in finding that the affidavit sufficiently described the items to be seized in terms of their being evidence of the commission of the named crimes.

**{¶39}** For his second and third issues, appellant argues that the search warrant was not supported by a showing of probable cause and that the items listed in the warrant were not described with sufficient particularity.

8

{¶40} The Supreme Court of Ohio, in *State v. George*, 45 Ohio St.3d 325 (1989), stated:

{¶41} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). Further, magistrates are permitted to make common sense inferences supported by other evidence in the affidavit. *State v. Kinney*, 83 Ohio St.3d 85, 96 (1998). In other words, the determination of the existence of probable cause must be based on the totality of the circumstances presented in the affidavit. *George, supra*, citing *Gates, supra.*

{¶42} The Supreme Court of Ohio, in *George, supra,* further stated:

{¶43} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Id*. at paragraph two of the syllabus, citing *Gates, supra*.

{¶44} The Supreme Court of Ohio, in *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, ¶1, held: "Using the totality-of-the-circumstances test in this case, we hold that the evidence seized from a single trash pull that corroborates tips and background information involving drug activity is sufficient to establish probable cause for a warrant." The Court in *Jones* stated that "the trash pull in this case should have been considered

9

as a part of the totality of the circumstances, along with all of the other information presented in the affidavit accompanying the request for the search warrant." *Id.* at ¶15.

{¶45} Appellant argues that the search warrant here was essentially based only on the single bud of marijuana and the top portion of a heat-sealed baggie, which were found in appellant's trash. Appellant relies heavily on *Young*, supra. In *Young*, the police officer saw a single bag of suspected marijuana on the defendant's dining room table. From this evidence alone, the officer concluded it was likely that other drugs and drug paraphernalia would be in the residence. Based on his affidavit, the officer obtained a search warrant for the seizure of other drugs and contraband listed in the affidavit. The trial court suppressed the evidence. This court affirmed, holding the warrant was overbroad in that it was not limited to a search for marijuana and marijuana-related paraphernalia. *Id.* at 256.

{¶46} However, *Young* is inapposite because, here, the evidence was not limited to the bud of marijuana and a portion of the baggie. Rather, Detective Deardowski's affidavit provided evidence that appellant was involved in drug trafficking. The affidavit stated that during the trash pull, the bud of marijuana was found together with the top part of a heat-sealed baggie and that such bags are often used to package marijuana.

{¶47} In addition, the affidavit recited that on June 3, 2014, a Postal Service Inspector advised the detectives that appellant and his wife were currently suspects in a money-laundering investigation and that the couple was involved in purchasing money orders for large amounts of money. The affidavit stated that, according to the inspector, these money orders were suspicious because they were consistently for amounts just under the $3,000 threshold. The affidavit stated that the Postal Service also advised

10

that since its investigation had begun one month ago, appellant had shipped about 20 money orders.

{¶48} Further, the trash pull revealed evidence that corroborated the Postal Service's report. The trash pull yielded four recent money order receipts, which evidenced 11 money order purchases that totaled over $7,000. The affidavit also stated that four Express Mail receipts showed that packages were recently sent to different cities out of state. The affidavit also stated that appellant has a prior conviction for drug cultivation in 2006.

{¶49} The Tenth District addressed strikingly similar facts in *State v. Pearson*, 10th Dist. Franklin No. 99AP-371, 2000 Ohio App. LEXIS 2492 (June 13, 2000). In *Pearson*, following the defendant's conviction of various drug offenses, she appealed, arguing that the trial court erroneously denied her motion to suppress because the affidavit in support of the warrant did not establish probable cause. The warrant authorized a search for evidence of the defendant's involvement in drug trafficking. The affidavit explained how an informant told the affiant-detective that the defendant bought $5,000 in money orders at the post office. She did not fill out a cash transaction report when she bought the money orders, which was required with the amount of the money orders. The detective said in his affidavit that the defendant had visited the post office twice that day to buy money orders. The detective also said that drug traffickers commonly use postal money orders to buy illegal drugs. In addition, a trash pull from garbage bags found in front of the defendant's home resulted in the discovery of three baggies with cocaine residue. The affidavit also mentioned that the defendant had a prior arrest for trafficking in drugs. The Tenth District held that the affidavit provided the

11

municipal court judge with sufficient information to conclude that a fair probability existed that contraband or evidence of drug trafficking would be found at appellant's home. *Id.* at *5. In support, the appellate court noted that the affidavit contained specific examples of appellant's suspected involvement in illicit narcotics activity and, as such, the municipal court judge properly issued the search warrant. *Id.*

**{¶50}** Further, while the instant search warrant described the items to be seized in broad and generic terms, the warrant satisfied the particularity requirement of the Fourth Amendment. In *Young, supra*, this court stated that the Fourth Amendment requirement of particularity prevents "a general, exploratory rummaging in a person's belongings." *Id.* at 256, quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). However, this court in *Young* continued, "[a] warrant describing 'items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and [the] nature of [the] activity under investigation permit.'" *Young, supra*, quoting *United States v. Wicks*, 995 F.2d 964, 973 (10th Cir.1993). Further, a search warrant containing a list of generic items likely to be found in the possession of a drug trafficker is not overbroad where the warrant limits the items to be seized to items that are related to the offenses of drug possession and drug trafficking. *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31, 13-13-32, 2014-Ohio-557, ¶34; *State v. Young*, 12th Dist. Clermont No. 2005-08-074, 2006-Ohio-1784, ¶33.

**{¶51}** Thus, contrary to appellant's argument, the fact that the search warrant included a long list of generic items did not make the search warrant general or exploratory because *the warrant expressly qualified each item to be seized as being connected with drug trafficking.* We agree with the trial court's finding that the

12

description of the items listed in the search warrant was sufficiently particular because the warrant stated that each item was related to drug trafficking.

**{¶52}** We therefore hold the trial court did not err in finding the search warrant was supported by probable cause as set forth in Detective Deardowski's affidavit and that the warrant was sufficiently particular in describing the items to be seized.

**{¶53}** For his fourth issue, appellant argues the municipal court judge failed to function as a neutral and detached magistrate, rendering the search unconstitutional. A judge or magistrate issuing a search warrant must be neutral and detached. *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶10. Further, a magistrate who is not neutral and detached and instead acts as an adjunct law enforcement officer cannot provide valid authorization for an otherwise unconstitutional search. *United States v. Leon*, 468 U.S. 897, 914 (1984).

**{¶54}** Appellant relies on *Lo-Ji Sales v. New York*, 442 U.S. 319 (1979), in which the United States Supreme Court held that the judicial officer did not act in a neutral and detached manner. However, in *Lo-Ji*, the judicial officer actually participated in conducting the search by identifying the items to be seized at the crime scene and ordering the police to seize them. *Id.* at 322. While appellant concedes the municipal court judge was not present during the search, he argues that *Lo-Ji* applies here: (1) because the detective gave the issuing judge a synopsis of the case before she signed the warrant, and (2) because the judge signed the warrant, which listed the items to be seized, the judge implicitly told the police what to seize. However, neither reason is convincing. The fact that Detective Deardowski provided a summary of the case to the judge does not mean that she was not acting in a neutral and detached manner.

Further, the fact that the judge signed the warrant that listed the items to be seized does not mean she told the officers what to seize; it merely means she agreed with the detective's listing of the items to be seized in the proposed warrant that he provided for her review. Thus, there is no evidence to support appellant's allegation that the issuing judge failed to fulfill her duty to act in a neutral and detached manner.

**{¶55}** For his fifth issue, appellant argues Detective Deardowski's affidavit was defective because it included deliberately or recklessly false statements and omitted material facts. The Supreme Court of the United States, in *Franks v. Delaware*, 438 U.S. 154, 171-172 (1978), set forth a two-part test to be applied in addressing such challenge to affidavits offered in support of a search warrant. First, the defendant must make a preliminary showing that the affiant included in his affidavit false statements that were made deliberately or with reckless disregard for their truth. "Reckless disregard for the truth" in this context means the affiant had serious doubts as to the truth of his allegations, a very high standard. *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984). Second, the court must determine if the allegedly false statements were necessary to the issuing judge's finding of probable cause. *Franks, supra.*

**{¶56}** Appellant argues that Detective Deardowski made three deliberately or recklessly false statements: (1) that appellant was convicted of drug cultivation; (2) that he had purchased money orders in amounts just under the $3,000 threshold; and (3) that the trash pull was at appellant's residence.

**{¶57}** However, none of the statements regarding these matters in the affidavit rose to the level of being deliberately or recklessly false. First, while appellant was *arrested* for drug cultivation, in fact, he pled guilty to permitting drug abuse. Detective

14

Deardowski testified at the suppression hearing that he read the LEADS report before drafting the affidavit and misunderstood it to mean that appellant was convicted of drug cultivation. He testified that, while he learned about this mistake after the warrant was signed, at the time he drafted the affidavit, he believed that appellant had been convicted of drug cultivation. The trial court's finding that Detective Deardowski was negligent rather than reckless in this regard is supported by *State v. Waddy*, 63 Ohio St.3d 424 (1990). In *Waddy*, the Supreme Court of Ohio held that misreading a LEADS report is negligence, not recklessness, and negligence is insufficient to invalidate an affidavit for a search warrant. *Id*. at 441.

{¶58} Second, Detective Deardowski stated in his affidavit that before he drafted it, he received information from the Postal Service that appellant had repeatedly purchased money orders and that these purchases were suspicious because the amount of the money orders was always just under $3,000. However, at trial, Postal Inspector Mark Kudley testified he did not report that appellant's activities were suspicious because he was purchasing money orders for just under $3,000. Rather, he testified that appellant's activities were suspicious because he was repeatedly purchasing money orders *on the same day from different post office locations, thus splitting-up his purchases.* Mr. Kudley said that money orders over $3,000 require the purchaser to report his personal information. Mr. Kudley said that if appellant had bought the money orders from the same location, the aggregate amount of money orders he bought on any given day would have exceeded the $3,000 threshold, and he would have had to report his personal information.

{¶59} Under *Franks, supra,* the defendant has the burden to present evidence

15

that at the time the affidavit was prepared, the affiant's statement was intentionally or recklessly false. Regardless of the discrepancy about how appellant kept under the $3,000 threshold, the trial court found the detective's testimony to be credible.

{¶60} Third, appellant argues that Detective Deardowski's statement in his affidavit that the trash pull occurred at appellant's residence was deliberately or recklessly false because it took place 100 feet in front of his residence at the end of his driveway. The trial court found it insignificant that the trash can was 100 feet from appellant's residence since trash cans are often put out by the road at the end of the resident's driveway. Thus, there was nothing deliberately or recklessly false or misleading about Detective Deardowski's statement.

{¶61} Appellant also argues that Detective Deardowski's statement in his affidavit that the marijuana bud was found "in conjunction with" the top portion of a heat-sealed baggie was deliberately or recklessly false because the only connection between the bud and the remnant of the baggie was that they were found in the same trash bag. However, that was sufficient to support the detective's statement and we perceive nothing misleading about it.

{¶62} Further, appellant argues Detective Deardowski omitted from his affidavit the fact that, eight days prior to execution of the search warrant, in response to a complaint, a truck registered to appellant was located near his house and a dog sniff did not result in an alert to the presence of drugs in the vehicle. Appellant argues the detective intentionally omitted this fact in an effort to establish probable cause when none existed. However, the trial court found this fact was insignificant because Detective Deardowski said he was unaware of the negative dog sniff when he prepared

the affidavit. The court also found that even if knowledge of the negative dog sniff could be imputed to the detective, it would have had little weight in determining probable cause since the dog sniff occurred several days before issuance of the warrant. This finding is supported by *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, in which the Second District stated:

> **{¶63}** The Sixth Circuit[, in *Mays v. Dayton* (6th Cir.1998), 134 F.3d 809, held that a *Franks* hearing based on omissions from an affidavit in support of a search warrant is merited "only in rare instances" because "affidavits with potentially material omissions, while not immune from *Franks* inquiry, are much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Id.* Because affidavits are drafted in the middle and during the rush of a police investigation, the Sixth Circuit noted, "an affiant cannot be expected to include every piece of information gathered in the course of an investigation." *Id.* In determining that no violation occurred, the court set forth a test for omissions triggering a *Franks* inquiry: "[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Id.* at 816. (Emphasis sic.) *Blaylock, supra*, at ¶15.

**{¶64}** We therefore hold the trial court did not err in finding that Detective Deardowski did not deliberately or recklessly make any misstatement in his affidavit and did not omit any facts with the intention to mislead.

**{¶65}** In any event, even if the search warrant was flawed, that would not be the end of our analysis. In certain situations, a "good faith exception" to the exclusionary rule exists when there is no police illegality to deter. *Young, supra,* at 257, citing *State v. George*, *supra*, citing *Leon*, *supra*, at 923. The "good faith exception" provides that where evidence is obtained by police acting in *reasonable reliance* on a search warrant issued by a detached and neutral magistrate or judge, which is later determined to be

17

invalid, the evidence seized remains admissible. *Young, supra,* at 258, citing *George* at paragraph three of the syllabus.

{¶66} To determine whether a police officer's reliance on a search warrant was reasonable, this court held the test is whether a reasonably well-trained officer would have known that the search was illegal, despite the authorization of the issuing judge or magistrate. *State v. Hawkins*, 120 Ohio App.3d 277, 282 (11th Dist.1997).

{¶67} While the trial court alternatively found that the good faith exception would not apply, we do not agree. For the reasons discussed above, a reasonably well-trained officer would not have known that the search was illegal, despite the authorization of the issuing judge. Thus, even if we were to hold the search warrant was invalid, the good faith exception would apply.

{¶68} Appellant's first assignment of error is overruled.

{¶69} For appellant's second assigned error, he contends:

{¶70} "The trial court erred when it failed to re-open the suppression hearing to consider trial testimony that contradicted the testimony given by a law enforcement officer during the motion to suppress (sic), and the court may consider the testimony."

{¶71} This assignment of error revisits the alleged discrepancy between Detective Deardowski's statement in his affidavit and the trial testimony of Postal Inspector Kudley regarding appellant's apparent efforts to evade the $3,000 threshold. Appellant argues that, due to this alleged inconsistency, the trial court should have re-opened the suppression hearing.

{¶72} The decision whether to re-open a suppression hearing rests within the sound discretion of the court, and will not be disturbed absent an abuse of discretion.

18

*State v. Lashuay*, 6th Dist. Wood No. WD-06-088, 2007-Ohio-6365, ¶19. Contrary to appellant's argument, the trial court did not ignore the apparently conflicting testimony. Rather, the court considered the argument, but chose not to re-open the hearing because appellant could have called, but failed to call, Mr. Kudley to testify at the suppression hearing. Thus, appellant did not offer any new evidence in support of his motion to re-open. Further, as noted above, the court found that Detective Deardowski's testimony was credible.

{¶73} Since the trial court stated its reasons that were supported by the record, the trial court did not abuse its discretion in deciding not to re-open the suppression hearing.

{¶74} Appellant's second assignment of error is overruled.

{¶75} For his third and final assignment of error, appellant alleges:

{¶76} "The major drug offender specification should have been dismissed."

{¶77} Appellant filed a motion to dismiss the major drug offender specification provided for at R.C. 2925.03 and R.C. 2925.11, which require that such offenders be given the maximum sentence. Appellant argued the specification is unconstitutional because it gives the state the authority to seek greater punishment for the underlying offense without proof of any additional fact or element. The court denied the motion.

{¶78} In support of his argument, appellant contends that the major drug offender specification is analogous to the OVI offender specification, which the Eighth District held to be unconstitutional in *State v. Klembus*, 8th Dist. Cuyahoga No. 100068, 2014-Ohio-3227.

{¶79} In *Klembus*, the defendant argued that the repeat OVI offender

19

specification allows the prosecutor to "arbitrarily obtain a greater prison sentence for the underlying offense without proof of any additional element, fact, or circumstance." *Id.* at ¶7. Agreeing with the defendant, the Eighth District held that a repeat OVI offender may be subjected to an increased penalty solely at the prosecutor's discretion when deciding whether to present the repeat OVI offender specification to the grand jury. *Id.* at ¶19. "The increased penalty does not depend upon the jury finding any additional elements, facts, or circumstances beyond a reasonable doubt." *Id.*

{¶80} The Eighth District in *Klembus* relied on *State v. Wilson*, 58 Ohio St.2d 52 (1979), to support its holding. In *Wilson*, the Ohio Supreme Court held that prosecutorial discretion, standing alone, does not violate equal protection. *Id.* at 55. However, if two statutes "prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause." *Id.* at 55-56. Therefore, the Eighth District in *Klembus* held that, in light of the prosecutor's discretion and the fact there is no requirement to apply the specification uniformly to all offenders, the repeat OVI specification is not rationally related to a legitimate state purpose. *Klembus* at ¶21-23.

{¶81} The Supreme Court of Ohio allowed a discretionary appeal of *Klembus*, and in *State v. Klembus*, ___ Ohio St.3d ___, 2016-Ohio-1092, reversed the Eighth District's decision. The Supreme Court distinguished *Wilson, supra,* noting that in *Wilson,* the defendant challenged the constitutionality of the burglary statute and the aggravated burglary statute, arguing that the two statutes imposed different punishments for identical criminal conduct and thus violated equal protection. *Id.* at 55-56. In contrast, the Supreme Court stated that specifications such as the repeat OVI

20

offender specification do not prohibit conduct; they merely add sentencing enhancements to the violation of a predicate statute. *Id.* at ¶17. Thus, the Supreme Court held that because that case did not involve multiple criminal offenses, equal protection was not implicated. *Id.* at ¶18. The Supreme Court further held that the possibility of longer prison sentences for OVI offenders who continue to violate the OVI statute is rationally related to the state's interest in punishing repeat offenders and protecting the public and, thus, the repeat OVI offender specification does not violate equal protection. *Id.* at ¶22.

{¶82} The analysis adopted by the Supreme Court in *Klembus* applies with equal force to the major drug offender specification because that specification, like the repeat OVI offender specification, does not prohibit conduct; it merely adds sentencing enhancements (based on the amount of drugs involved) to the violation of a predicate drug offense. As such, the major drug offender specification does not violate equal protection.

{¶83} We therefore hold the trial court did not err in denying appellant's motion to dismiss the major drug offender specification.

{¶84} For the reasons stated in this Opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

21

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶85} I respectfully dissent.

{¶86} Appellant argues that Detective Deardowski's affidavit does not contain sufficient information to support the search warrant issued in this case. He observes that only one bud of marijuana was found in this trash, and that the partial baggie also found in the trash was never checked for marijuana residue. The Eighth District has found that failure to test a baggie allegedly used for storing marijuana militates against using the discovery of the baggie in support of a search warrant in a drug case. *State v. Kelly*, 8th Dist. Cuyahoga No. 91137, 2009-Ohio-957, ¶20.

{¶87} Appellant further cites to this court's decision in *State v. Young*, *supra*. In that case, police were helping the Ashtabula housing inspector execute an administrative warrant, when they spotted a baggie containing marijuana in plain view. *Id.* at 249. Based on this, the police obtained a second warrant, allowing them to seize drugs and related contraband, generally. *Id.* at 250. Large quantities of marijuana, money and cocaine were discovered. *Id.* Appellant was indicted, and moved to suppress, which motion the Ashtabula County Court of Common Pleas granted. *Id.* at 251-252.

{¶88} This court reviewed the testimony of the detective obtaining the warrant in the *Young* case and observed:

{¶89} "The implication of Detective Pouska's testimony is that on the basis of his observation of a single baggy of marijuana, he had determined that appellee's residence was a 'drug house,' which conclusion was reinforced by his erroneous assumption that a 'laundry list' affidavit and search warrant form had universal and

22

omnipotent application regardless of the substantive scope of probable cause existing in a specific case. The assumption that appellee's residence was a 'drug house' was not supported by any other evidence: Detective Pouska had not received a tip from an informant; he had not received complaints from a neighbor; the police had not observed the house; nor had they attempted to make a controlled buy; and, Detective Pouska had no other direct evidence of any other contraband items to provide a panoramic basis of trustworthy probable cause.

**{¶90}** "In short, Detective Pouska treated his observation of a small baggy of marijuana in appellee's home as evidence of trafficking. In the absence of other indicia of trafficking, this was a violation of appellee's basic right to be free from unreasonable searches. The search warrant should have been narrowly tailored to include those items which the police could have reasonably anticipated finding on the basis of observing a single baggy of marijuana, which would have included marijuana and marijuana related paraphernalia." *Young* at 255-256.

**{¶91}** Similarly, in this case, appellant contends Detective Deardowski's affidavit, recounting the discovery of a single bud of marijuana in his trash, along with a partial baggie never tested for drug residue, were insufficient facts to give the Chardon Municipal Court probable cause to issue the wide-ranging warrant in this case.

**{¶92}** Citing to *Jones*, *supra*, the majority finds that the totality of the circumstances set forth in Detective Deardowski's affidavit constituted probable cause for the warrant to issue. In particular, the majority notes that appellant and his wife were under investigation for money laundering, and that drug traffickers often launder money. The majority further points to appellant's 2006 drug conviction. Combined with the

report from the U.S. Postal Inspector about the money laundering investigation, the majority contends the totality of the circumstances justified the warrant issued.

{¶93} This writer respectfully disagree. *Jones* is easily distinguished from the instant case. In that case, the trial court granted a motion to suppress based on a single trash pull, which ruling the Eighth District affirmed. *Jones*, *supra*, at 268. The state appealed to the Supreme Court of Ohio, which reversed. *Id.* at 270-271. As the Supreme Court noted, the trash pull itself revealed bottles of chemicals used for methamphetamine production, and methamphetamine residue on plastic tubing. *Id.* at 267-268. The police had a report from a confidential informant that a woman named "Lauren" was manufacturing methamphetamine. *Id.* at 267. They learned a woman named Lauren Jones lived at the address where the trash pull eventually occurred – they found her mail in the trash pull. *Id.* The totality of the circumstances clearly supported the warrant which eventually issued.

{¶94} In the present case there was the suspicion of money laundering, provided by the U.S. Postal Inspector, in conjunction with other evidence which may have supported a warrant to issue regarding whether appellant was engaged in money laundering. However, it is clear that a single marijuana bud in his trash, along with an eight year old drug conviction, did not provide sufficient evidence to justify a search warrant directed to drug trafficking. The search warrant should have been narrowly tailored to money laundering. The supporting affidavit did not provide probable cause for the overbroad warrant which issued in this case.

{¶95} Finding that the first assignment of error has merit I would decline to reach the remaining assignments of error, deeming them moot.