[Cite as *State v. Lawrence*, 2018-Ohio-3844.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO


STATE OF OHIO,                          :          **O P I N I O N**

          Plaintiff-Appellee,          :
                                                           **CASE NO. 2017-T-0107**

     - vs -                                 :

MICHAEL A. LAWRENCE, JR.,                :

          Defendant-Appellant.          :


Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00656.

Judgment:  Affirmed in part, reversed in part, and remanded.


*Dennis Watkins*, Trumbull County Prosecutor, *Charles L. Morrow*, Assistant Prosecutor, and *Ashleigh Musick*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH  44481 (For Plaintiff-Appellee).

*Joseph J. Jacobs, Jr.*, The Jacobs Legal Group, 15614 Detroit Avenue, Lakewood, OH 44107 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.


{¶1}    Appellant, Michael A. Lawrence, Jr., appeals his convictions following his no contest plea to illegal cultivation of marijuana and possession of marijuana, third-degree felonies.  We affirm in part, reverse in part, and remand for resentencing.

{¶2}    Lawrence raises four assignments of error:

{¶3} "[1.] The trial court erred in denying defendant's motion to suppress after police made a warrantless entry into defendant's home without consent based on a 911 hangup call from a cell phone whose location was mistaken by police using only GPS to estimate its location.

{¶4} "[2.] The trial court erred in denying defendant's motion for additional hearing after the suppression hearing when defendant presented newly discovered evidence from witnesses and the officer's own dispatch records indicating that the officers waited more than an hour to enter the home, instead of entering almost immediately as the officer testified.

{¶5} "[3.] The trial court erred in failing to dismiss the case based on the prejudicial delay of the state to indict and serve defendant when during that time the state destroyed police dispatch records that were exculpatory and critical to defendant's defense.

{¶6} "[4.] The trial court erred in failing to merge the two offenses for purposes of sentencing as agreed by the state and defendant."

{¶7} Appellant's first assignment urges reversible error based on the trial court's failure to grant his motion to suppress evidence found via the search of his home.

{¶8} The state's sole witness at the suppression hearing was Officer David Rankin. He explained that in August of 2015, Liberty Township police were dispatched to Lawrence's residence following a hang up 911 call during which dispatch heard a male and female yelling.

{¶9} Upon arrival, Rankin knocked on the door, but did not hear anything. When Lawrence answered his door, he looked "distraught, upset[, and h]is chest [was] going up

2

and down.  [Rankin] could see that [Lawrence] had, like fresh scrapes on his hands and looked like he had just engaged in an altercation.  He was * * * wiping his hands off on his jeans to get the sweat off.  Visibly nervous." Rankin asked Lawrence why he appeared upset and what caused the scratches, but Lawrence did not have an answer for either.

{¶10}  The officers asked to search the home after explaining that there was a 911 call that was indicative of domestic violence, but Lawrence declined.  Rankin did not hear the 911 call but was instead advised by his dispatcher that two people could be heard fighting in the background of the call.  The operator called the number back, but no one answered.  Rankin was told by dispatch that the call originated from Lawrence's address.  Rankin recalls telling Lawrence that they needed to search his home to ensure that there was no one injured or dead inside.

{¶11}  Rankin's sergeant canvassed the neighbors, who told him that a woman lived in the home with Lawrence and that she drove a red Volvo.  There was a red Volvo in the garage, but Lawrence told the officers his girlfriend was working.  After Lawrence momentarily went inside to secure his dog, he locked the front door behind him.  The officers eventually contacted the fire department to break down the door, but before they breached the door, Lawrence retrieved his spare key from the garage and let them in.  They did not find anyone inside but found a "moderately sized" marijuana grow operation.

{¶12}  Rankin recalls Lawrence's girlfriend showing up after they searched the home, not before.

{¶13}  Lawrence and his girlfriend, Kelly Bobersky, testified for the defense.  Lawrence recalls answering the door half asleep and denies being nervous or sweaty.  He described himself as disoriented.  Lawrence recalls telling the officers that the

3

scratches on his hand were from working on his car a few days prior. Lawrence said that Rankin told him that the 911 call sounded "very dire" and that a woman could be heard screaming before the call ended. Lawrence advised the officers that the call could not have come from his home because he does not have a landline.

{¶14} Lawrence produced his phone to the officers to show them that the call was not made from his phone. He also called his girlfriend several times, who was working at the time. When he finally reached her, he said he gave his phone to the officers to prove that she was not inside his house, but this did not satisfy their request to enter. She eventually came home to show the officers that she was okay.

{¶15} Lawrence testified that she came home and left again *before* officers entered his home. He says he was not arrested at that point, but instead, was being detained in the backseat of the police car. The officers told him that someone else could still be inside and in need of assistance.

{¶16} He was arrested for obstruction of justice before he allowed the police to enter his home, and explained that he only permitted them to enter to avoid a broken front door. The obstruction charge against him was eventually dismissed.

{¶17} When Lawrence finally allowed the officers inside, they found marijuana in plain view and he was arrested. He says this was several hours after they first arrived. Lawrence eventually learned that the 911 call came from his neighbor's cellular phone.

{¶18} Bobersky testified that Lawrence called her a little after 9 p.m. stating that the police wanted to ask her a few questions. An officer got on the phone and asked her to identify herself and if she was hurt. He also asked whether she was Lawrence's girlfriend. She was told that everything was fine and that she did not need to come home.

4

**{¶19}** Bobersky called him back a few times and when Lawrence finally answered, he told her to come home. Upon her return, she recalls that Lawrence was in a police car being held for obstruction of official business. The officers did not allow her to speak with him and told her to leave. She recalls being home from approximately 10 to 10:30 p.m. and states that her home had not yet been searched.

**{¶20}** The Fourth Amendment to the United States Constitution generally prohibits warrantless searches and seizures. However, there are several exceptions to the rule, including the "emergency-aid exception" or the "exigent-circumstance exception." *State v. Dunn,* 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶13-15.

**{¶21}** "[I]n *Michigan v. Fisher,* 558 U.S. 45, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009), the [U.S. Supreme C]ourt upheld an officer's warrantless entry into the defendant's residence as reasonable when the police officers who were responding to a call regarding a disturbance observed a tumultuous situation when they arrived at the home, including blood on a damaged vehicle parked in the driveway and witnesses reporting that the defendant was 'going crazy' inside. * * * The *Fisher* court noted that '[o]fficers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception.' * * * Rather, '[a]n action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed *objectively,* justify [the] action."'" (Emphasis added in *Stuart.*) *Brigham City v. Stuart,* 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

**{¶22}** "Because police officers are duty-bound to provide emergency services to those who are in danger of physical harm, * * * courts must frequently consider the

reasonableness of an officer's actions in situations, such as the one at bar, where a person's life is in jeopardy. In *State v. Applegate,* 68 Ohio St.3d 348, 626 N.E.2d 942 (1994), [the Ohio Supreme Court] upheld a warrantless entry into a residence by police officers who, while responding to a report of domestic violence, heard sounds coming from inside the residence indicative of violence. * * * [It] held that the warrantless entry was certainly justified by the officers' reasonable belief that entering the residence was necessary to investigate an emergency threatening life and limb. *Id.* at 349–350, 626 N.E.2d 942." *Id.* at ¶19-20.

{¶23} Once an exception is applicable, "[a] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.' *Terry v. Ohio* (1968), 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908." *State v. Applegate,* 68 Ohio St.3d 348, 350, 626 N.E.2d 942 (1994).

{¶24} Our standard of review is mixed. *Id.* We must accept the trial court's findings of fact as true if its findings are supported by competent, credible evidence because "the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992), citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583 (1982). Upon accepting the trial court's factual findings, we independently determine whether the applicable standard has been satisfied as a matter of law. *State v. Andrews,* 177 Ohio App.3d 593, 2008-Ohio-3993, 895 N.E.2d 585, ¶16 (11th Dist.).

{¶25} Here, the testimony at the hearing shows that the officer's warrantless entry was objectively reasonable and justified based on their belief that a domestic violence situation occurred in appellant's home. When they arrived, Rankin described Lawrence

as nervous, sweaty, and described him as having fresh scratches on his hands. Officers were also told that his girlfriend drove a red Volvo, which was parked in the garage, yet Lawrence told them that she was working.

{¶26} Although Lawrence testified that he explained away the scrapes as a result of working on his car and Lawrence's girlfriend spoke to the officers in person and over the phone to advise that there was no domestic violence situation and that she was safe, their testimony does not eliminate the possibility that another individual could have called for emergency assistance from Lawrence's home.

{¶27} Lawrence directs our attention to the fact that the phone call originated from a cell phone, not a land line associated with his residence. However, at this juncture the officer believed the call originated from Lawrence's home because he was acting on the information relayed to him by dispatch. Rankin testified, "we received a radio dispatch from Trumbull County 911 that it was a possible domestic at that address, an open line 911 call. It was a male and a female fighting in the background." And upon Lawrence answering the door, he looked like "he had just engaged in an altercation" and was nervous and sweating. Rankin likewise recalls the girlfriend arriving at the home *after* they searched the residence.

{¶28} The trial court found that the officers had an objective and reasonable basis to believe that someone inside the home was at risk or in need of medical attention. It discredited appellant's testimony as not credible. Thus, because the trial court's findings are supported by competent, credible evidence we accept them as true.

{¶29} And in light of these facts, the officers' search of Lawrence's home upon responding to a 911 call that came from his residence in which a woman could be heard

7

screaming is reasonable and consistent with the exigent circumstance exception to the right to be free from unreasonable searches and seizures. Consequently, the officer's discovery of Lawrence's marijuana plants in plain view found during their protective sweep of the home was not improper.

**{¶30}** Lawrence's first assigned error lacks merit and is overruled.

**{¶31}** Lawrence's second assigned error contends the trial court abused its discretion in denying his motion for a second suppression hearing.

**{¶32}** A trial court has discretion in deciding to reopen a suppression hearing, which we review for an abuse of discretion. *State v. Bangera,* 11th Dist. Geauga No. 2015-G-0021, 2016-Ohio-4596, 70 N.E.3d 75, ¶72, *appeal not allowed,* 149 Ohio St.3d 1418, 2017-Ohio-4038, 75 N.E.3d 236, and *cert. denied,* 138 S.Ct. 672, 199 L.Ed.2d 535 (2018).

**{¶33}** An abuse of discretion connotes "judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood,* 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, 2009 WL 1177050, ¶30, citing *State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). When "'the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' * * *." *Ivancic v. Enos,* 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70, quoting *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶67.

**{¶34}** The suppression hearing was held June 2, 2017. Twenty days later, Lawrence filed a combined motion to compel discovery and motion for an additional suppression hearing. For cause, Lawrence asserted in part that the state's responses to

discovery did not indicate the time the police entered his home and that "several witnesses have been found that contradict the testimony of the officer at the suppression hearing * * *." Lawrence claims that his "new evidence" shows that there was a more than two-hour lapse in time before the police searched his home and that this time was more than sufficient to secure a warrant. Thus, he claims that the passage of this amount of time does not support the application of the exigent circumstances exception.

{¶35} First, Lawrence alleges that he could have called his brother as a witness at the suppression hearing, but he did not because Lawrence was unaware that the officer was going to "lie" and testify that Lawrence's home was searched *before* his girlfriend arrived. And because she does not drive, Lawrence's brother picked her up and drove her to Lawrence's home that night. He claims his brother would have testified that the home was not yet searched by 10:30 p.m.

{¶36} Further, Lawrence identifies a neighbor woman, who he claims had temporarily relocated, but who had recently returned to the area as the other witness who would contradict Rankin's testimony. Lawrence claims she was the person who actually called 911. Lawrence contends this neighbor also would have testified that she witnessed the police enter Lawrence's home only *after* Bobersky returned home and then left again, approximately one and one-half hours after the police initially arrived. Lawrence did not, however, provide an affidavit by this individual in support.

{¶37} On July 13, 2017 and July 19, 2017, Lawrence filed the affidavit of Bobersky and a photocopy of his brother's affidavit in which both individuals state that the police were not in Lawrence's home at approximately 10:30 p.m. when they left the premises. Bobersky also avers that no search of the house had taken place yet.

9

**{¶38}** However, and as the state points out, these affidavits are consistent with Rankin's testimony because he testified that the police first secured the inside of the home before Bobersky arrived. Their statements are reconcilable with his testimony that the protective sweep of the home was conducted before they arrived. Rankin describes thereafter holding Lawrence and waiting for the search warrant to arrive, which did not get delivered until 10 or 10:30 p.m. And because his brother and Bobersky were not present for the protective sweep, they were not aware that it had occurred.

**{¶39}** The state explains that the officers did not actually obtain the warrant until almost two hours after they arrived at the scene and at that juncture, the officers conducted a thorough search after Lawrence's brother and girlfriend left.

**{¶40}** Lawrence's motion likewise alleges that the police "at all times" knew that the 911 phone call was from a cellular phone, not a landline. However, there is nothing in evidence supporting this allegation. Instead, during the time in question, Rankin was told only that the call came from Lawrence's home. There is no evidence to the contrary.

**{¶41}** The trial court did not specifically address or rule on Lawrence's motion for a supplemental suppression hearing before he entered his no contest plea in August of 2017. However, the foregoing exchange occurred at the July 24, 2017 pretrial regarding his request for a supplemental hearing:

**{¶42}** "THE COURT: I think you had some other motions in there as well?

**{¶43}** "[DEFENSE COUNSEL]: * * * there's also a motion to set a new hearing but I will let those go and see what the Judge thinks of it once I file the brief.

**{¶44}** "* * *

10

**{¶45}** "THE COURT: And the other issue for a different hearing, I will wait and see what your brief says –

**{¶46}** "* * *

**{¶47}** "THE COURT: -- because, frankly, keep in mind that * * * the credibility at a preliminary hearing is with the Court and certain things that [Lawrence] testified to. I've been around the block * * *, it does not seem very credible to me."

**{¶48}** When the court issued its decision overruling his motion to suppress it did not reference his request for a supplemental hearing. The trial court likewise did not mention his request for a supplemental hearing upon announcing its intention to overrule the motion to suppress at the final pretrial, yet Lawrence subsequently pleaded no contest knowing his motion for a supplemental hearing remained pending. Thus, Lawrence invited this alleged error, and under the invited-error doctrine, an appellant is not entitled to take advantage of an error that he induced the trial court to make. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶243. Notwithstanding, consistent with Rankin's testimony, the trial court specifically finds in its decision that the initial search occurred before 10 p.m. Thus, it functionally negated the need for a hearing as Lawrence's witnesses had no knowledge of the initial search of the home.

**{¶49}** Accordingly, Lawrence's second assigned error lacks merit.

**{¶50}** Lawrence's third assigned error asserts the trial court erred in failing to dismiss the charges against him in light of the prejudicial delay in his indictment.

**{¶51}** Lawrence moved to dismiss the charges arguing the state violated his right to due process based on its delay in serving the indictment and that he was denied access to exculpatory dispatch recordings as a result of the delay.

11

**{¶52}** Lawrence's claim that he was not served with the secret indictment for more than a year is unchallenged. Further, that the dispatch recordings were purged is likewise undisputed. However, the state opposed the motion to dismiss explaining that it brought the charges as soon as feasible based on a delay and backlog in the drug analysis. It also claimed that although the actual dispatch recordings no longer exist, Lawrence was provided copies of the written dispatch call summary reflecting the times and substance of each communication.

**{¶53}** The Due Process Clause affords an accused a meaningful opportunity to present a complete defense, including the preservation of and access to exculpatory evidence. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). As alleged, the Due Process Clause protects a criminal defendant from being convicted where the state fails to preserve materially exculpatory evidence. *Id.*

**{¶54}** "An unjustifiable delay between the commission of an offense and a defendant's indictment * * * which results in actual prejudice to the defendant, is a violation of the right to due process of law * * *." *State v. Luck,* 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus; *State v. Whiting,* 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998).

**{¶55}** Courts employ a two-prong test to determine whether an indictment should be dismissed due to pre-indictment delay. *Luck* at 157-158. First, a defendant "must * * * establish his defense suffered actual prejudice due to the delay in indictment. * * * If the defendant produces evidence of actual prejudice, the burden then shifts to the state to establish a justifiable basis for the delay." *State v. Drummond,* 11th Dist. Ashtabula No. 2013-A-0055, 2015-Ohio-939, 31 N.E.3d 1216, ¶30-32, citing *Luck.*

{¶56} We review constitutional questions de novo because they are questions of law. *State v. Burgette,* 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶10; *Krusling v. Ohio Bd. of Pharmacy,* 12th Dist. Clermont No. CA2012-03-023, 2012-Ohio-5356, 981 N.E.2d 320, ¶9.

{¶57} As for the first prong, actual prejudice, Lawrence states that the dispatch recordings were exculpatory because they would have proven that the police waited more than an hour before entering his home, and as such, he was prejudiced as a result of the delay. We disagree. As pointed out by the state, Lawrence had access to the dispatch summary, which documents the time and substance of each police interaction with dispatch.

{¶58} The state produced the written dispatch summary to Lawrence in discovery. The summary reveals in part that the initial 911 call occurred at 20:43:33 or 8:43 p.m. Thereafter at 21:50:44 or 9:50 p.m., the log reflects: "914 advised residence was checked. There is no female inside of the residence." Thus, one hour, seven minutes, and eleven seconds passed between the hang up call to 911 and the conclusion of the initial protective sweep of the premises. This is consistent with Rankin's testimony that they first entered the residence before Bobersky and Lawrence's brother arrived.

{¶59} Because we find no prejudicial effect, the burden does not shift to the state to establish a justifiable basis for the delay, and we need not address this issue.

{¶60} Accordingly, Lawrence's third assigned error is lacks merit.

{¶61} His fourth and final assigned error asserts that the trial court erred in failing to merge his convictions for sentencing purposes consistent with his agreement with the

13

state.  He likewise argues that merger was required as a matter of law.  The state concedes error and agrees that resentencing is warranted.

**{¶62}**  First Lawrence claims that the state agreed to a merger of his sentences if he pleaded guilty to both illegal cultivation of marijuana and possession of marijuana.

**{¶63}**  However, he ultimately pleaded no contest.  Further, Lawrence's written no contest plea agreement does not mention an agreed merger and in fact, states that no promises were made to obtain his plea of no contest.  The plea hearing reflects that once the trial court recognized that Lawrence changed his plea from guilty to no contest, it advised Lawrence that it would not abide by this merger agreement.  In response, Lawrence's counsel stated that no agreement existed.  He thereafter did not object to the lack of merger at sentencing.  Thus, he has waived all but plain error.

**{¶64}**  "It is well-settled that the failure to object to the trial court's failure to merge charges for sentencing waives all but plain error.  *State v. Elmore,* 111 Ohio St.3d 515, 534, 2006-Ohio-6208.  As a result, we shall review appellant's challenges for plain error.  A plain error is one which affects a party's substantial rights thereby affecting the outcome of the proceedings.  See, e.g., *State v. Stanley,* 11th Dist. No.2007-P-0104, 2008-Ohio-3258, at ¶ 29."  *State v. Town,* 11th Dist. Trumbull No. 2007-T-0120, 2008-Ohio-6878, ¶45.

**{¶65}**  Moreover, although the state may have agreed to dismiss one of the two charges against Lawrence upon his pleading guilty, whether charges merge is a matter of law and not subject to agreement, which we review de novo.  *State v. Fortner,* 7th Dist. No. 16 BE 0007, 2017-Ohio-4004, 82 N.E.3d 60, ¶7.

**{¶66}**  R.C. 2941.25 states:

14

{¶67} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶68} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶69} *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶31, sets forth a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses:

{¶70} "[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Accord State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶128, *reconsideration denied,* 147 Ohio St.3d 1439, 2016-Ohio-7677, 63 N.E.3d 157, and *cert. denied,* 137 S.Ct. 1586, 197 L.Ed.2d 714.

{¶71} "If *any of these three factors* is true, the offenses are not subject to merger pursuant to R.C. 2941.25. *Ruff* at ¶25." (Emphasis sic.) *State v. Armstead-Williams,* 11th Dist. Portage No. 2016-P-0007, 2017-Ohio-5643, ¶29, *appeal not allowed,* 152 Ohio St.3d 1407, 2018-Ohio-723, 92 N.E.3d 879.

{¶72} Lawrence was charged with two, third-degree felonies: illegal cultivation of marijuana, in an amount in excess of one-thousand grams but less than five-thousand grams, in violation of R.C. 2925.043(A)&(C)(1) & (5)(d), and possession of marijuana, in an amount in excess of one-thousand grams but less than five-thousand grams, in violation of R.C. 2925.11(A)&(C)(3)(d).  He was convicted and sentenced for both offenses, including 30 days in jail total, a $5,000 mandatory fine for each offense, and upon a violation of community control, 36 months in prison on each count.

{¶73} As for the factual basis for the offenses, the prosecutor stated at sentencing,

{¶74} "the State would have proven beyond a reasonable doubt that on or about the 28th day of August, 2015, * * * police officers were dispatched * * * because of a domestic violence call.  Officers arrived at the location and upon a search of the home they found a marijuana grow with marijuana.  The drugs were sent to BCI & * * * found to be marijuana in excess of 1,000 grams."

{¶75} The state concedes error and explains that the amount of marijuana in Lawrence's possession supports a finding of guilt on both offenses.  However, the same marijuana is used to support both findings and none of the Ruff findings are "true."  Accordingly, merger is required under R.C. 2941.25(A).  Lawrence's fourth assigned error has merit.

{¶76} The trial court's decision is affirmed in part, reversed in part, and remanded for resentencing.


TIMOTHY P. CANNON, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.


16