THE STATE OF OHIO, APPELLANT, *v.*
APPLEBURY ET AL., APPELLEES.

(No. C-860251 — Decided
February 11, 1987.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *William E. Breyer,* for appellant.

*Richard J. Goldberg,* for appellees Steve Applebury, John C. Hill and Frank Byrd.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

The trial court granted defendants' motion to suppress all evidence seized by virtue of a search warrant issued in connection with an investigation of gambling, and the prosecution appealed under R.C. 2945.67, claiming in its single assignment of error that the court erred when it granted the motion. The court's entry does not state its reasons, but the court had earlier read into the record its two reasons. The first reason was that the affidavit for the search warrant was fatally defective because the police officer who signed it was not the police officer named as the affiant in the first line of the affidavit. The second reason was that under our decision in *State* v. *Davies* (Jan. 8, 1986), Hamilton App. Nos. C-850112, -850113, -850128 & -850129, unreported, the police entry into the apartment to be searched was in violation of the Fourth Amendment "or" (*sic*) R.C. 2935.12. We agree with the prosecution that the court erred,

and we sustain the assignment of error.

The record discloses that Cincinnati Police Officers Robert Oliver and James O'Brien were partners jointly assigned to and participating in an investigation of gambling activities in apartment 4 at 1805-07 Lang Street in Cincinnati. The investigation began when an anonymous phone caller said the apartment was a "gambling house" and was served by Granzie Hughes, a "numbers runner" who brought in bets from Hamilton, Ohio, in "a late model Ford LTD tan in color Ohio 30 day temporary tag Q956109." The informant had personally witnessed Hughes deliver number slips and currency to occupants of the apartment. This information was confirmed by personal surveillance of the apartment building by the two partners and other officers over a period of four days. The informant met with Officer Oliver and delivered to him carbon copies of "betting slips" he had placed with the named runner. (This paragraph, except the first sentence, summarizes the police officers' claim of probable cause as set forth in the instant affidavit for search warrant.)

The officers prepared two affidavits for search warrants; one was for the "gambling house," the first line of which named Officer Robert Oliver as the affiant, and the other was for the runner's automobile, with Officer James O'Brien named as affiant. Because Officer O'Brien was due in municipal court the morning after the affidavits were prepared, he alone presented both affidavits to Hon. Sylvia D. Hendon, Judge of the Hamilton County Municipal Court; he was sworn by her and signed both. It was an oversight that no change was made in the name of the affiant as typed in the first line of the gambling house affidavit.

The two requested warrants were issued upon presentation, and they were executed in sequence. First, Officer O'Brien (with other officers) stopped the runner's automobile under an overpass on an interstate expressway while the runner was making his daily trip from Hamilton to Cincinnati. Fifteen minutes later, Officer Oliver (with other officers) approached the apartment building surreptitiously in a highway maintenance truck.

The only evidence about the officers' entry into the apartment is the testimony of Officer Oliver. He testified that when he reached the landing or hallway outside the apartment, the door was open and defendant Steve Applebury was standing in the doorway. The officer had his gun in his hand, lowered at his side, because he had information there were weapons inside the apartment. He told Applebury he had a search warrant, and walked in. No permission was requested or given.

The foregoing facts and circumstances do not provide a foundation for either of the trial court's reasons for suppressing the evidence seized under the search warrant for the gambling house.

The discrepancy on the face of the affidavit between the affiant named in the first line and the officer who swore to and signed it on the last line is a technical failure to comply strictly with Crim. R. 41(C), but it is not of constitutional magnitude. It is not a violation of the requirements of the Fourth Amendment to the United States Constitution or of Section 14, Article I of the Ohio Constitution that "no warrant shall issue, but upon probable cause, supported by oath or affirmation * * *."

Officer O'Brien who gave his oath had the same information as Officer Oliver who was named as the affiant. This information was amply sufficient to establish probable cause under the

"totality of the circumstances" test set forth in *Illinois* v. *Gates* (1983), 462 U.S. 213. The fact that some of the information was based on hearsay is not significant because there was "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Crim. R. 41(C). In brief, the affidavit was on oath and it established probable cause.

In *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251, 22 OBR 427, 490 N.E. 2d 1236, the Supreme Court upheld the constitutionality of a search warrant even though it was issued not on sworn affidavit but on oral testimony that was not sworn until after it was given. The failure to comply with Crim. R. 41(C) was not "fundamental" (that is, of constitutional magnitude). We find that the search warrant under scrutiny in this case was valid under *Wilmoth*.[1]

The execution of the search (entry into the apartment) was reasonable and not in violation of mandatory constitutional standards. The trial court believed this case was governed by *State* v. *Davies, supra,* but we hold this case is distinguishable on the facts. In *Davies,* the trial court's suppression order was upheld because there was evidence from which that court could conclude that without speaking a word, the police officer entered the apartment after the defendant had unlocked the apartment door and shoved the defendant inside with such force that he fell across the room against a couch. In the instant case, on the contrary, the officer announced he had a search warrant and entered without violence and without resistance.[2]

R.C. 2935.12[3] is not relevant to the subject case. The provisions of that statute make it plain that it applies only when the entry is by breaking down a door; *Davies* extends its application to an entry by violent, forcible action. In the instant case, the entry was through an open door, totally without force.

---

[1] Further, under *State* v. *Wilmoth, supra,* even if the noncompliance were fundamental, the Supreme Court said it was the judge, not the officers, who made the initial mistake, and "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States* v. *Leon* (1984), 468 U.S. 897, 916. The evidence before the trial judge in the instant case demonstrates clearly that the officers acted properly and with objectively reasonable good faith. There is no suggestion that the officers misled the municipal court judge by knowingly or recklessly furnishing false information, or that the judge abandoned the detached and neutral role required by the Fourth Amendment. The affidavit contained a patently sufficient demonstration of probable cause and was not so facially deficient that the officers could not reasonably presume it to be valid. *Leon, supra,* at 922-925.

[2] Police Officer Oliver had information that there were weapons inside apartment 4, but we do not rely in this decision on the existence of exigent circumstances. The trial court did not make any finding on exigent circumstances, but that sort of finding is neither a necessary part of nor relevant to our conclusions in the instant decision.

[3] R.C. 2935.12 provides:
"When making an arrest or executing a warrant for the arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such arrest or such search, he is refused admittance, but an officer executing a search warrant shall not enter a house or building not described in the warrant."

Defendants contend that it was unreasonable for Officer Oliver to enter apartment 4 without asking permission. The contention is feckless. There is no mandate in the Ohio statutes, in the United States Constitution, or in the Ohio Constitution (or in common sense, for that matter) that prohibits entry of a police officer with a valid search warrant by reason of withholding permission to enter. *State v. Alford* (May 21, 1973), Hamilton App. No. C-72457, unreported. A search warrant, by its very nature, authorizes a nonconsensual entry into the place to be searched. The entry in the instant case complied with all constitutional requirements for a reasonable search.

The prosecution argues that the defendants had no standing to file their motions to suppress because there was no evidence that any one or more of them owned, rented or occupied apartment 4. This argument was not raised in the trial court and it is waived. *State v. Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364; *State v. Holmes* (1985), 28 Ohio App. 3d 12, 28 OBR 21, 501 N.E. 2d 629.

We reverse the order granting defendants' motion to suppress, and we remand this case for further proceedings.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., BLACK and KLUSMEIER, JJ., concur.