[Cite as *State v. Tumblin*, 2023-Ohio-4099.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023CA0013 |
| BRAYDEN J. TUMBLIN | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:       Appeal from the Coshocton County Court of Common Pleas, Case No. 2022CR0044


JUDGMENT:       Affirmed


DATE OF JUDGMENT ENTRY:       November 14, 2023


APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

KATELYNN R. DAVID       RICHARD D. HIXON
Assistant Prosecutor       3808 James Court
318 Chestnut Street       Suite 2
Coshocton, OH 43812       Zanesville, OH 43701

*Gwin, P.J.*

{¶1}    Defendant-appellant Brayden J. Tumblin ["Tumblin"] appeals his conviction and sentence after a jury trial in the Coshocton County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    On March 21, 2022, Tumblin was indicted with one count of Aggravated Trafficking in Drugs, methamphetamine, within the vicinity of a juvenile in an amount equal to or greater than the bulk amount but less than five times the bulk amount in violation of R.C. 2925.03(A)(2), a felony of the second degree.

{¶3}    On April 8, 2022, Tumblin filed a Motion to Suppress. On May 10, 2022, an oral hearing was held on Tumblin's Motion to Suppress. By Judgment Entry filed May 13, 2022, the trial judge overruled the motion.

{¶4}    A change of plea hearing was held on June 13, 2022. Tumblin was present with counsel. The state informed the trial judge Tumblin was going to plead guilty to the single count as it is contained in the indictment. In exchange, the state would not oppose a pre-sentence investigation and would take no position on sentencing.

{¶5}    Tumblin pled guilty to aggravated trafficking in drugs as alleged in the Indictment. A pre-sentence investigation was ordered and the sentencing hearing was deferred until completion of the report. A sentencing hearing was scheduled for July 12, 2022; however, that hearing was rescheduled for July 25, 2022.

{¶6}    On July 22, 2022, Tumblin filed a motion to withdraw his guilty plea prior to sentencing. [Docket Entry No. 52]. By Judgement Entry filed August 12, 2022, the

trial judge granted Tumblin's motion to withdraw his plea of guilty. [Docket Entry No. 56].

{¶7} Tumblin filed a Motion in Limine on February 15, 2023. On March 2, 2023, the trial judge filed a Judgment Entry granting the motion. The judge ordered that the state exclude and/or redact references to Tumblin's prior convictions for theft offenses and his social security number.

{¶8} On March 7, 2022, Tumblin filed a second Motion in Limine to exclude references to journal entries related to his criminal conviction in Florida and any reference to the criminal history of Tumblin's mother or grandmother. On March 28, 2023, preceding the start of Tumblin's jury trial, the trial judge granted the second motion in limine.

*The jury trial*

{¶9} Former Coshocton County Sheriff's Detective Matt Woitel testified that around 10:00 P.M. on March 2, 2022, Coshocton County law enforcement executed multiple arrest warrants for Tumblin at the residence where he lived with his mother, grandmother, his thirteen-year-old stepsister and his ten-year-old brother. 1T. at 110-111.[1] Woitel testified that Tumblin was the target in a drug investigation. Id. at 105. He stated that the specific method used to target Tumblin was a new program called "END." Id. at 108;109. This method is designed to target those with outstanding arrest warrants. Id. at 109. Woitel confirmed that on March 2, 2022, Tumblin had an active arrest warrant. A search warrant was also obtained for the residence. Id. at 109.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

**{¶10}** When the arrest warrants were executed, Tumblin was found upstairs in his bedroom. Id. at 110. When Woitel entered the bedroom, he observed a substance that was later confirmed to be methamphetamine on the bed. Id. at 112. After seeing drugs in plain view, detectives stopped and secured the residence. Id. at 112. Woitel then obtained a second search warrant. Id at 112[2].

**{¶11}** Woitel further testified that Tumblin had a computer monitor at the foot of the bed displaying video from surveillance cameras around the outside of the residence. Id. at 115; State's Exhibit 4. Due to his training, education, and experience, Woitel believed this to be significant. Id. at 115. He testified that drug dealers usually have surveillance systems where they can monitor anyone approaching the location at all times. Id at 115. This allows them to know who is coming and going, if someone may be coming to rob them, and if cops are raiding them. Id at 115. No additional monitors, other than the one in Tumblin's bedroom, were found inside the home.

**{¶12}** In addition to the surveillance equipment, a substance confirmed to be methamphetamine was found on the bed. Id. at 116. There was a smoking device found under a pillow and a chunk of methamphetamine was found on the floor behind the bed. Id at 116; State's Exhibit 6; State's Exhibit 17. Three digital scales of differing size were also taken as evidence. 1T. at 121; State's Exhibits 8, 9 and 10. State's Exhibit 11 was identified as five scale calibration weights each weighing 100 grams. Id. at 123-124. State's Exhibit 12 was identified as two clear plastic baggies, one of which contained a white residue. Id. at 124. State's Exhibit 13 was identified as a small, black, plastic baggie.

---

[2] The first search warrant was to look for Tumblin at the residence for the arrest warrants. T., *Motion to Suppress,* May 10, 2022 at 11. It was found invalid as it had the incorrect name and address. Id. at 11. The second search warrant was for drugs and drug related items. 1T. at 113.

Id. at 125. State's Exhibit 14 was identified as a plastic container with an orange lid that says "cookies" with a white residue inside. Id. at 125.

{¶13}  On March 8, 2022, Woitel interviewed Tumblin at the Coshocton County Sheriff's office. Id. at 130. State's Exhibit 18 was a video of the interview that was played for the jury. Tumblin told the detective that the drugs found were for his personal use. 1T. at 135. Tumblin told the detective that he "smoked a lot." Id. at 151. Tumblin said he had not sold drugs recently, but he had sold to a couple of friends a month or two ago. 1T. at 136; 143. He only ever sold to two people. 1T. at 153. Tumblin said he had the scales and calibration weights because people try to rip you off when you purchase methamphetamines. Id. at 142; 144. Further, the security cameras were for protection from people vandalizing cars. 1T. at 146. Tumblin said he got the money to buy the drugs found in his room from his tax refund and landscaping work. Id. at 154-156. Tumblin was found with forty dollars in cash. Id. at 179. Tumblin discussed with law enforcement his "CashApp" transactions and Facebook Messenger communications, which showed no evidence that he was selling drugs, only buying them. Id. at 179-189.

{¶14}  Ashley Nutter is a forensic scientist at the Central Ohio Regional Crime Lab. 2T. at 230. She is the primary drug chemist for the lab. Id. at 230. Ms. Nutter's confirmed that States Exhibit 7 was the substance that she tested and confirmed to be methamphetamine. Id. at 238, 239. She identified States Exhibit 20 as the lab report for this matter. Id. at 240. Ms. Nutter's then testified that methamphetamine is a Schedule II controlled substance. Id at 242. She further testified that the "bulk amount" for methamphetamine is 3 grams and that the drugs found in Tumblin's bedroom weighed 10.9 grams. Id. at 242-243.

{¶15} At the close of the evidence, defense counsel informed the trial judge that "he did not intend to make a motion for judgment of acquittal pursuant to Criminal Rule 29." 2T. at 245. Counsel explained that the case turns on circumstantial evidence and the case "needs to be submitted to the jury because we are dealing with circumstantial evidence and not necessarily a missing element of an offense." Id. at 245-246.

{¶16} After being instructed by the trial judge, the jury found Tumblin guilty of aggravated trafficking in an amount equal to or exceeding bulk amount but less than five times bulk amount, and that Tumblin committed the offence in the vicinity of a juvenile, in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the second degree as set forth in Count 1 of the indictment. Id. at 290. The court sentenced Tumblin to an indefinite sentence with a mandatory minimum term of eight years and a maximum term of twelve years.

{¶17} On April 4, 2023, Tumblin filed a Motion for Judgement of Acquittal Pursuant to Crim.R. 29(C). The trial judge denied the motion on April 20, 2023.

*Assignments of Error*

{¶18} Tumblin raises three Assignments of Error,

{¶19} "I. THE JURY AND TRIAL COURT ERRED, RESPECTIVELY, BY RETURNING A VERDICT OF GUILTY AND DENYING APPELLANT'S CRIM. R. 29 MOTION, AS INSUFFICIENT EVIDENCE WAS PRESENTED TO SUSTAIN A CONVICTION FOR AGGRAVATED TRAFFICKING IN DRUGS UNDER R.C. 2925.03(A)(2)/(C)(1).

{¶20} "II. DEFENDANT/APPELLANT'S MOTION TO SUPPRESS WAS IMPROPERLY DENIED, AS THE EVIDENCE PRESENTED SHOWED THAT THE

ARRESTING OFFICER(S) FAILED TO ABIDE BY THE REQUIREMENTS OF R.C. 2935.12 GOVERNING NONCONSENSUAL ENTRY WHEN EXECUTING THE ARREST WARRANT.

{¶21} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT/APPELLANT'S CHALLENGE FOR CAUSE AS TO A JUROR WHO EXPRESSLY STATED THEIR ACTUAL BIAS TO THE COURT, RESULTING IN THE EMPANELING OF A BIASED JUROR, TO THE PREJUDICE OF DEFENDANT/APPELLANT AND IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW."

I.

{¶22} In his First Assignment of Error, Tumblin argues the evidence was insufficient to prove beyond a reasonable doubt that he engaged in aggravated trafficking in drugs.

### Standard of Appellate Review– Sufficiency of the Evidence.

{¶23} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30; *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense

and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

**{¶24}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the*

*average mind that Tumblin was guilty beyond a reasonable doubt of Aggravated*

*Trafficking in Drugs in violation of R.C. 2925.03(A)(2)/ (C)(1)(c)*

{¶25} Tumblin does not challenge either the identity of the drugs as methamphetamines, a Schedule II drug, or the weight of drugs found as bulk amount but less than five times bulk amount. Further, Tumblin does not challenge the jury's finding that the offense was committed in the vicinity of a juvenile, i.e. his ten-year-old brother and thirteen-year-old step-sister. Rather, Tumblin contends, "Without evidence of any sort of overt act taken to ship, prepare for shipment, transport, deliver, prepare for distribution, or distribute the drugs, there is insufficient evidence to sustain a conviction for drug trafficking, even if the amount possessed is large." [Appellant's brief at 11].

{¶26} Tumblin was convicted of Aggravated trafficking in drugs. R.C. 2925.03(A)(2) provides in relevant part,

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶27} R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably

be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

**{¶28}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Johnson*, 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) *citing State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936):  *State v. Rojas*, 64 Ohio St.3d 131, 139, 592 N.E.2d 1376(1992); State *v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.)  Thus, "[t]he tests for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria."  Id. *citing State v. Adams*, 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v. Paidousis*, 10th Dist. Franklin No. 00AP–118, 2001 WL 436079 (May 1, 2001). *See also, State v. Butler*, 5th Dist. Holmes No. 2012–CA–7, 2012–Ohio–5030, ¶ 25.

**{¶29}** Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990); *see also State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001); *Hinerman v. Grill on Twenty First, L.L.C.*, 5th Dist. Licking No. 2020 CA 00054, 2021-Ohio-859, 2021 WL 1045729, ¶ 88. Moreover, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

**{¶30}** Lay witness testimony of a police officer is admissible under Evid.R 701 where the officer based his opinion on his police training and experience. Further, his

opinion can be helpful to the trier-of-fact in determining whether the drugs were for sale or personal use. *State v. McClain,* 6th Dist. Lucas No. L-10-1088, 2012-Ohio 5264, ¶13; *State v. Walker,* 11th Dist. Lake Nos. 2022-L-077, 2022-L-078, 2023-Ohio-1949, ¶39; Law-enforcement officers are "routinely allowed to testify that circumstances are consistent with [the] distribution of drugs rather than personal use." *United States v. Swafford,* 385 F.3d 1026, 1030 (6th Cir. 2004) (collecting cases).

{¶31} Former Detective Woitel testified that based upon his training and experience surveillance cameras and monitors are used by individuals who sell drugs, as opposed to individuals who merely use drugs. 1T. at 115-116. He further testified that he found in the bedroom not one, but three digital scales of differing sizes. Id. at 121-122; State's Exhibits 8, 9 and 10. Woitel testified that drug dealers used such scales to weigh the product before selling it because it is more accurate than merely "eyeballing the amount." Id. In that way, the seller will not lose money by selling too much. Id. The former detective found Ziplock bags with weights to calibrate the scales. 1T. at 123-124. Two plastic bags with white residue were also recovered. Id. at 124; State's Exhibit 12. The former detective testified that such bags can be used to put drugs in for resale. Id. at 125. The former detective further testified that based upon his training and experience a user generally buys around 3.5 grams of methamphetamine at an average cost of $40.00. 2T. at 192-193. Tumblin had close to 11 grams in his possession. Id. at 193. He noted that sellers will take that amount and try to sell off some of it to make money. Id. at 198.

{¶32} In summary, based upon his training and experience, Woitel testified that the amount of drugs recovered, the scales the baggies and other containers would indicate drug trafficking as opposed to possession. Id. at 128-129.

{¶33} Plastic baggies, digital scales, and video surveillance are often used in drug trafficking which could constitute circumstantial evidence that Tumblin was using these items to commit that crime. *See, State v. Cutlip,* 7th Dist. Belmont No. 21 BE 0032, 2022-Ohio-3524, ¶101; *State v. Kent,* 8th Dist. Cuyahoga No. 109118, 2022-Ohio-834, ¶49; *State v. Malott,* 12th Dist. Nos. CA2007-02-006, CA2007-02-007, CA2007-02-008, 2008-Ohio-2114, ¶20; *State v. Fain,* 5th Dist. Delaware No. 06 CAA 20094, 2007-Ohio-4854, ¶38. The state presented evidence that in his interview with Woitel, Tumblin admitted to selling methamphetamines to friends around two months ago. 1T. at 143.

{¶34} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Tumblin was guilty of aggravated trafficking in drugs in the vicinity of a juvenile, in an amount equaling or exceeding bulk amount but less than five times the bulk amount. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Tumblin's conviction.

{¶35} When reviewing a challenge to the sufficiency of the evidence, we do not weigh the credibility of the evidence. *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶18. Because the trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of proffered testimony," a jury may rely on circumstantial evidence to reasonably infer an offender's knowledge. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *see generally Rehaif v. United States*, 588 U.S. ——, ——, 139 S.Ct. 2191, 2198, 204 L.Ed.2d 594 (2019); *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶26.

**{¶36}** Tumblin's First Assignment of Error is overruled.

II.

**{¶37}** In his Second Assignment of Error, Tumblin argues the trial court erred in overruling his motion to suppress. Specifically, Tumblin contends that the officers failed to abide by R.C. 2935.12 when attempting to serve the arrest warrants and entered his home without consent and forcefully against warrant requirements.

**Standard of Appellate Review**

**{¶38}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra.

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Issue for Appellate Review**: *Whether the judge correctly found the entry in this case was not a forceable entry*

{¶39}  The only witness to testify during the May 10, 2022 hearing on Tumblin's motion to suppress was Detective Mat Woitel. Detective Woitel testified that on March 2, 2022 he had three active arrest warrants from the Coshocton Municipal Court for Tumblin. T. *May 10, 2022 Suppression Hearing* at 6. Detectives went to the front door of the residence where Tumblin lived with his mother, grandmother, thirteen-year-old step-sister and ten-year-old brother. Id. at 6; 13. The detectives knocked and announced "sheriff's office." Id at 13. The door was ajar and swung open, so the detectives stepped inside. Id. They again announced, "sheriff's office." Id. The detectives were met by Tumblin's mother and grandmother. Id. Tumblin's grandmother told the detectives that Tumblin was not home; however, Tumblin's mother stated that Tumblin was upstairs. Id. at 16-17. No evidence was presented that either Tumblin's mother or grandmother refused the detectives admittance or ask them to leave the home.

{¶40}  R.C. 2935.12 Forcible entry in making arrest; execution of search warrant provides,

> (A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if,

after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant.

{¶41} R.C. 2935.12 applies only if law enforcement officials break down a door to enter. *State v. Baker,* 87 Ohio App.3d 186, 193, 621 N.E.2d 1347(1st Dist. 1993). The statute involves violent, forcible entry. *State v. Applebury*, 34 Ohio App.3d 376, 378, 518 N.E.2d 977 (1st Dist. 1987). *Accord, State v. Campana,* 112 Ohio App.3d 297, 302, 678 N.E.2d 626(11th Dist. 1996) ("In this case, the officers knocked and then walked into the workshop through an unlocked door that was ajar. In that they did not have to break down the door or break a window to effectuate the arrest, R.C. 2935.12 is inapplicable to this case."); *State v. Gibson,* 164 Ohio App.3d 558, 2005-Ohio-6380, 843 N.E.2d 224(4th Dist.), ¶14("In light of the foregoing, we find that the trial court did not err in finding that R.C. 2935.12 is inapplicable to the present set of facts, where the deputies entered the home through an open door without the use of force.").

{¶42} Tumblin did not challenge the validity of the arrest warrants or the fact that he lived at the residence in the trial court or in this Court. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Martin,* 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶78; *State v. Justice,* 5th Dist. Fairfield No. 10 CA 41, 2011-Ohio-4004, ¶26.

**{¶43}** In the case at bar, the uncontroverted evidence established that Tumblin lived at the residence, the officers had three active warrants to arrest Tumblin and no force was used to enter the home. Accordingly, the trial court correctly overruled Thumblin's motion to suppress.

**{¶44}** Tumblin's Second Assignment of Error is overruled.

III.

**{¶45}** In his Third Assignment of Error, Tumblin argues that the trial Court "abused its discretion" by empaneling a biased juror. Specifically, Tumblin argues that Juror Number 8, L.C., expressed bias toward law enforcement and the State of Ohio.

**Standard of Appellate Review**

**{¶46}** "If the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge and exhausts his peremptory challenges before the full jury is seated. *State v. Eaton* (1969), 19 Ohio St.2d 145, 48 O.O.2d 188, 249 N.E.2d 897, paragraph one of the syllabus, *death penalty vacated* (1972), 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750." *State v. Tyler,* 50 Ohio St.3d 24, 31, 553 N.E.2d 576(1990), *superseded by constitutional amendment as stated in State v. Smith, Ohio, 80 Ohio St.3d 89, 103, 684 N.E.2d 668, n. 4.*

**{¶47}** A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion. *State v. Wilson*, 29 Ohio St.2d 203, 211, 280 N.E.2d 915, 920(1972); *State v. Prez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶140; *State v. Tyler,* 50 Ohio St.3d 24, 31*.*

**Issue for Appellate Review**: *Whether the trial court abused its discretion by overruling Tumblin's challenge for cause of Juror No. 8.*

**{¶48}** Thumblin's assignment of error centers upon the following exchange that occurred during voir dire,

> MR. CROSS: Ms. Colvin, I saw you nodding your head. So, you have a relative in law enforcement.
>
> [Juror No. 8]: I just have my one son is a private investigator, but he lives in New Mexico.
>
> MR. CROSS: Okay.
>
> [Juror No. 8]: And then my one son lives in South Carolina, and he is a paramedic for the SWAT team.
>
> MR. CROSS: Private investigator in New Mexico?
>
> [Juror No. 8]: Um-huh.
>
> MR. CROSS: Probably a lot of cartel stuff?
>
> [Juror No. 8]: Um-huh.
>
> MR. CROSS: Methamphetamines?
>
> [Juror No. 8]: Um-huh.
>
> MR. CROSS: Make sure you answer just because we are doing a recording.
>
> [Juror No. 8]: Okay. Yes.
>
> MR. CROSS: Make sure you answer "yes" or "no".
>
> [Juror No. 8]: Yes.

MR. CROSS:  Does that cause you some issues with this case, some bias issues potentially?

[Juror No. 8]: Yes.

MR. CROSS:  Okay. Do you believe you could be fair and impartial?

[Juror No. 8]:  I can try. I mean, like she [referring to Juror No. 7] said, back the blue.

MR. CROSS:  You back the blue?

[Juror No. 8]:  Yes. 100 percent.

MR. CROSS:  So, if two witnesses were at odds, law enforcement and an ordinary citizen, would you believe law enforcement over the ordinary citizen.

[Juror No. 8]:  Yes.

1T. at 46-47. Tumblin's challenge for cause was overruled. Id. at 54-56. The trial judge reasoned,

I don't believe that she expressed a bias that would keep her from viewing the evidence objectively. And nobody ever defined what "back the blue" means, to be quite frank. It might mean that they are happy to have them respond to a call for service. They might feel differently when they look in their rear-view mirror and see a cruiser right behind them while they're driving and have to check their speed limit. I'm not sure exactly what "back the blue" means at this point.

1T. at 55-56. Tumblin excused Juror Number 8 with a preemptory challenge. Id. at 60. Tumblin exhausted all four of his preemptory challenges. 1T. at 60; 61; 65; and 66.

**{¶49}** It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial the right to an impartial jury. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Ross v. Oklahoma,* 487 U.S. 81, 85, 108 S.Ct. 2273; 101 L.Ed.2d 80(1988). Case authority generally addresses the issue of a denial of the defendant's challenge for cause of a prospective juror at two levels, commencing with potential constitutional violations involving the sixth and fourteenth amendments, and concluding with an examination of whether the trial court otherwise abused its discretion pursuant to state standards. *State v. Bell*, 3rd Dist. Marion No. 9-90-79, 1991 WL 71926(1991).

**{¶50}** In *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682(1988), the Ohio Supreme Court in following the decisions of the United States Supreme Court in *Gray v. Mississippi*, 481 U.S. 648, 665, 107 S.Ct. 2045, 95 L.Ed.2d 622(1987) and Ross *v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) stated:

> The relevant inquiry in this situation is 'whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.' [Emphasis included.] [Citations omitted.]
>
> * * * any claim that the jury was not impartial is not focused on the juror excused by the exercise of the peremptory challenge, but rather is focused on the jurors who ultimately sat. Therefore, in order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges *and* demonstrate that one of the jurors seated was not impartial. Unless a juror is challenged for cause, he is presumed to be impartial. Even if the court erred in denying the appellant's motion, appellant

has not been denied a right to an impartial jury, nor has he been deprived

of his right to due process in this context by being 'forced' to use a

peremptory challenge." (Emphasis added.)

*State v. Broom*, 40 Ohio St.3d at 287-288; *State v. Bell*, 3rd Dist. Marion No. 9-90-79,

1991 WL 71926(1991).

{¶51}  We note that Tumblin used a peremptory challenge to excuse Juror Number

8. 1T. at 60. Tumblin's challenge for cause of Juror J.M.R. was likewise overruled[3]. 1T.

at 56-57. Tumblin used a preemptory challenge to remove Juror J.M.R. 1T. at 61. We

further note that Juror Number 7, K.C., was excused upon a "stipulated challenge for

cause." 1T. at 54. No further challenges for caused were raised. None of the prospective

jurors Tumblin challenged for cause were ultimately seated on the jury. Thus, while

Tumblin did use all of his peremptory challenges, he is unable to demonstrate that any

one of the jurors seated was less than impartial. He has therefore failed to state a

constitutional violation. *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682, 695

(1988); *State v. Tyler,* 50 Ohio St.3d 24, 31, 553 N.E.2d 576(1990), *superseded by*

*constitutional amendment as stated in State v. Smith, Ohio, 80 Ohio St.3d 89, 103, 684*

*N.E.2d 668, n. 4.* That said, we turn to his state-law claims.

{¶52}  Crim.R. 24 states, in relevant part,

**(C) Challenge for Cause.** A person called as a juror may be

challenged for the following causes:

* * *

(9) That the juror is possessed of a state of mind evincing enmity or

---

[3] Tumblin does not challenge the trial judge's denial of his challenge for case with respect to Juror J.M.R. in this appeal.

bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

* * *

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

*See also,* R.C. 2945.25; 2945.26.

{¶53} "A holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible.... Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." *Dennis v. United States*, 339 U.S. 162, 171-172; 70 S.Ct. 519, 94 L.Ed. 734 (1950). *See also Smith v. Phillips,* 455 U.S. 209, 216, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) *citing Frazier v. United States*, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948) and *United States v. Wood*, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936). To show prejudice, Tumblin "must show that the juror was *actually* biased against him." *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67 (emphasis in original). "Actual bias is 'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *State v. Bates,* 159 Ohio St.3d 156, 2020-Ohio-634, 149 N.E.3d 475, ¶ 25, *quoting United States v. Torres*, 128 F.3d 38, 43 (2nd Cir. 1997). Thus, an appellant "must prove that at least one of the jurors at his trial, because of the juror's partiality or

biases, was not 'capable and willing to decide the case solely on the evidence' before that juror." *Bates* at ¶ 25, *quoting Smith v. Phillips*, 455 U.S. 207, 217, 102 S.Ct. 940, 71 L.Ed.3d 78 (1982); *State v. Knight*, 6th Dist. Erie No. E-21-017, 2022-Ohio-1787, ¶ 21.

{¶54} The primary case upon which Tumblin relies is *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001). In *Hughes*, a prospective juror in a federal theft and illegal firearm possession case told the district court during voir dire that she had a relative and a couple of acquaintances who worked in law enforcement, and that she did not think she could be a fair juror. The juror did not make any response to several subsequent questions by the district court to the jury pool as a whole regarding their ability to be impartial and fair. Neither the district court nor defense counsel further questioned the juror individually, and defense counsel did not move to strike her, despite a request from the defendant that he do so.

{¶55} On appeal of denial of habeas corpus after conviction, the Sixth Circuit held that defense counsel's failure to strike the juror constituted ineffective assistance of counsel. The court acknowledged, "A juror's express doubt as to her own impartiality on voir dire does not necessarily entail a finding of actual bias." *Hughes*, 258 F.3d at 458. However, the court found that there was a "conspicuous lack of response, by both counsel and the trial judge, to [the juror's] clear declaration that she did not think she could be a fair juror." Id. Because "key elements of juror rehabilitation and juror assurances of impartiality" were absent in the case, the court found the juror to have been actually biased based on her statements to the district court. Id. at 459–60. Moreover, the court held that the district court's collective questions to the jury pool, to which the juror failed to respond, was insufficient to rehabilitate the juror or to provide sufficient evidence of her

impartiality. Id. at 461. Finally, the court held that there can be no possible "strategic" reason for allowing an actually-biased juror to be seated and such an error is necessarily prejudicial, and so concluded that the defendant had received ineffective assistance of trial counsel. Id. at 463.

{¶56} Tumblin also cites the Ohio Supreme Court case of *State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, 149 N.E.3d 475. In *Bates,* the Court held that the failure to strike a juror who admitted bias constitutes ineffective assistance of counsel. That case, however, is readily distinguishable. The defendant in that case was black, and a Caucasian juror revealed a blatant racial bias against black people in her jury questionnaire. *Bates* at ¶ 27. Neither the court nor the parties ever questioned the juror concerning her admitted racial bias, but she was nonetheless empaneled. Id. at ¶ 29. The court held that defense counsel's failure to question the juror about her questionnaire was objectively unreasonable attorney performance under *Strickland* and the juror's statements demonstrated actual bias and thus prejudice. Id. at ¶ 32, 37.

{¶57} The Ohio Supreme Court has indicated that the fact that the trial court had the opportunity to observe the demeanor of the prospective juror and evaluate firsthand the sincerity of the responses to questions is of considerable significance in the appellate review of these decisions. *See Berk v. Matthews*, 53 Ohio St.3d 161, 169, 599 N.E.2d 1301(1990); *State v. Bell*, 3rd Dist. Marion No. 9-90-79, 1991 WL 71926(1991); *State v. Williams*, 6 Ohio St.3d 281, 288, 452 N.E.2d 1323 (1983) (Trial courts have discretion in determining a juror's ability to be impartial.); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841(1985) ("Deference must be paid to the trial judge who sees and hears the juror"). This court is not free to substitute its judgment for that of the trial

court. Id.

{¶58} In the case at bar, it would have been preferable if, after expressing reservations about her ability to be fair and impartial, Juror Number 8 had been individually asked by the trial court or counsel if the juror could nevertheless follow the court's instructions and render a fair verdict based solely on the evidence. Although Juror Number 8 expressed *some* reservations about her ability to serve impartially, Juror Number 8 never unequivocally expressed that she could not be fair and impartial. Unlike the juror in *Hughes,* Juror Number 8 was excused by Tumblin's use of a preemptory challenge.

{¶59}  The record does not demonstrate that Juror Number 8 was unable to be impartial, and Tumblin has not established that Juror Number 8 was *actually* biased against him. Accordingly, the trial judge did not abuse his discretion in denying Tumblin's challenge for cause of Juror No. 8.

{¶60}  Tumblin's Third Assignment of Error is overruled.

{¶61} The judgment of the Coshocton County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur